■ In the Matter of CHRISTOPHER KRUTY, Appellant, v THERESA MANELL, Respondent. (And Two Other Related Proceedings.) [670 NYS2d 247] —Yesawich Jr., J. Appeals from three orders of the Family Court of Clinton County (McGill, J.), entered May 31, 1995, April 25, 1996 and September 20, 1996, which dismissed petitioner's applications, in three proceedings pursuant to Family Court Act article 6, for modification of a prior order of visitation.

Petitioner separated from respondent, his former spouse, before their son Matthew was born, and has never had unsupervised visitation with the boy, now 11 years old, who is the subject of this proceeding. In the first and third of the three petitions to which this appeal pertains, petitioner sought modification of a 1994 order to enable him to enjoy unsupervised visitation with his son. In the second petition, also denominated one for modification, he essentially requested assistance from Family Court in obtaining the Law Guardian's approval of a proposed supervisor. The first two petitions were dismissed summarily for failure to allege facts which, if proven, would support a finding that circumstances had changed sufficiently to warrant consideration of whether a modification was in Matthew's best interest. The third petition was dismissed after a hearing, also on the ground that petitioner had failed to show the requisite change of circumstances. Petitioner appeals from each of the three orders.

It is difficult to evaluate Family Court's finding that petitioner did not demonstrate a change of circumstances because the precise findings and conclusions underlying the original de-

termination establishing and continuing supervised visitation are neither outlined by the court, nor set forth elsewhere in the record. It appears that the limitations were imposed because of petitioner's unorthodox religious beliefs and his admission that he had at one time intended, in accordance with those beliefs, to engage in sexual intercourse with his daughter from a prior marriage, when she was approximately 16 years old. This plan was never carried out because the girl and her mother—both of whom, petitioner contends, shared his unconventional beliefs—left abruptly.

At the hearing, petitioner testified, *inter alia*, that his beliefs have since changed and expressly disavowed any intention to discuss his philosophy with Matthew, who, in his view, is too young to grasp its complex, abstract concepts. In addition, the psychologist who supervised petitioner's most recent—and by all accounts successful—visits with his son, and also treated petitioner alone, opined that petitioner posed no threat to his son, and that both he and Matthew would benefit "enormously" from increased contact with each other. Not insignificantly, the psychologist also indicated that his interactions with petitioner provided no basis for concluding that the latter is deceitful or manipulative.

These facts, taken together, are sufficient to constitute a change of circumstances warranting consideration of whether the existing visitation scheme still serves Matthew's best interest (*see, Matter of Brynn UU. v Erin I.*, 220 AD2d 830, 831). The aforementioned testimony of petitioner and his treating psychologist, which was essentially unrebutted, demonstrates that contact with petitioner does not pose any threat to the child, mental or physical, for the boy will not be exposed to petitioner's unorthodox beliefs, or urged to act in accordance therewith; hence, whatever harm or threat of harm underlay the initial visitation limitations apparently no longer exists.

Nevertheless, after considering all of the salient facts and circumstances, with a view toward discerning what is best for Matthew, we believe that unsupervised visitation would be inappropriate at this time. When the hearing was held in mid-1996, petitioner had not visited with Matthew for more than a year, due to difficulties in locating (and obtaining the Law Guardian's approval of) an acceptable supervisor, and there is no indication that visitation has occurred since then. Moreover, during 1994 and 1995, Matthew enjoyed only brief, monthly visits with his father, amounting to no more than eight or nine hours in total. Given these circumstances, it is, we think, more prudent to resume supervised visitation, at a frequency and

duration that will allow petitioner and his son to become reacquainted, and to develop a rapport, in the presence of a neutral third party, before thrusting the child into the entirely unfamiliar situation of an unsupervised relationship.

Effectuating such visitation requires no modification of the presently effective underlying court order; consequently, petitioner is not, at this time, entitled to the relief he sought in his first and third petitions. Moreover, as Family Court noted, it is petitioner's responsibility to arrange for an acceptable supervisor, and if he is to move toward the more normal relationship he would like to have with his son, he must make every effort to do so. Concomitantly, the Law Guardian is required to promptly consider those persons suggested by petitioner, undertake whatever investigation he deems necessary to determine their suitability and render a decision—bearing in mind the goal of facilitating contact, and the development of the meaningful relationship to which petitioner and son are entitled (*see, Matter of Twersky v Twersky*, 103 AD2d 775)—without undue delay. Accordingly, to the extent that petitioner's second application requested an order directing the Law Guardian to consider, and approve or reject, his proposed supervisor, that petition should have been granted.

Mercure, J. P., Peters, Spain and Carpinello, JJ., concur. Ordered that the orders entered May 31, 1995 and September 20, 1996 are affirmed, without costs. Ordered that the order entered April 25, 1996 is reversed, on the law and the facts, without costs, and petition dated January 4, 1996 granted to the extent that the Law Guardian is directed to consider, and approve or reject, petitioner's proposed supervisor within 30 days of service of this order with notice of entry, and to take similar timely action with respect to future proposals, if and when they are made.